Peelle, J.,
delivered the opinion of the court:
The claimant, an enlisted man of the United States Army, after thirtj7 .years’ service Avas retired March 16, 1896, under the provisions of the act of February 14, 1885 (23 Stat. L., 305), as amended by the act of September 30, 1890 (26 Stat. L., 504), which latter act, so far as applicable to the present case, reads:
*519 “That when an enlisted man has served as such thirty years in the United States Army or Marine Corps, either as private or noncommissioned officer, or both, he shall, by making' application to the President, be placed on the retired list ■ hereby created, with the rank held by him at the date of retirement; and he shall thereafter receive seventy-five per centum of the pay and allowances of the rank upon which he was retired.” * * *
At the time of the claimant’s retirement he was receiving-s' per month, and after his retirement he was allowed 75 per cent of that sum, or $24, and in addition thereto he was allowed, under the act of March 16,1896, paragraph 3 (2 Sup. Rev. Stat., 453), $9.50 per month “in lieu of the allowance for subsistence and clothing.”
Two questions of law arise on the findings of fact. First: Is an enlisted man on the retired list of the Army entitled to the increase of 20 per cent provided for by section 6 of the act of April 26, 1898 (2 Sup. Rev. Stat., 746), which reads:
‘£ Sec. 6. That in time of war the pay proper of enlisted men shall be increased 20 per centum over and above the rates of pay as fixed by law; provided that in war time no additional increased compensation shall be allowed to soldiers performing what is known as extra or special duty. x * * ”
As throwing light on the construction of that language, contended for by the claimant, reference is made to the case of United States v. Tyler (105 U. S., 244-246), affirming the judgment of this court (16 C. Cls. R., 223), where it was held that Revised Statutes, sections 1262, 1263, allowing longevity pay to commissioned officers of the Army, applied to officers on the retired list, on the ground that Revised Statutes, section 1094, in express terms declares that “the officers of the Army on the retired list” are a part of the Army, and as such are, by Revised Statutes, section 1256, “entitled to wear the uniform of the rank on which they may be retired. They shall continue to be borne on the Army Register, and shall be subject to the rules and articles of war, and to trial }yy general court-martial for any breach thereof.”
Furthermore, by Revised Statutes, sections 1259 and 1260, it is provided, in substance, that a retired officer of the Army nay be assigned to duty at the Soldier’s Home, with the approval of the Secretary of War, but to no other duty, *520 except that upon his own application he may be detailed to serve as a professor in any college, no additional pay, however, being- allowed to such officer therefor.
Later, by the act of March 2, 1899.(30 Stat. L., 979), entitled “An act for increasing the efficienc3r of the Army of the United States, and for other purposes,” the language of the second proviso to section 7 of that act is:
“That in time of war retired officers of the Army may, in the discretion of the President, be employed on actNe military duty, other than in the command of troops, and when so employed they shall receive the full pay and allowances of their grade.”
That act is a recognition by the Congress that though the retired officers of the Army are in express terms declared to be a part of the Army, they were not theretofore subject to active military duty. Furthermore, it will be noted that the right to “receive the full pay and allowances of their grade” is conditioned upon being “ employed in active military duty.” Hence, if we were to concede that enlisted men on the retired list still continue- a part of the Army, that act would be persuasive in determining the rights of the claimant under the prior act of April 26, 1898, upon which he bases his right to recover, especially when considered in connection with the proviso set forth to the latter act prohibiting in time of war increased compensation £ ‘ to soldiers performing what is known as extra or special duty. ” The Congress would hardly have placed that inhibition upon soldiers performing active service if they had intended by the act to pay enlisted men on the retired list 20 per cent additional pay for performing no service whatever.
There are no such laws with reference to enlisted men on the retired list.' There is no statute declaring them to be part of the Arary, nor is there airy statute subjecting them to military duty. Furthermore, it should be borne in mind that officers of the Army are (with the advice and consent of the Senate) appointed during the pleasure of the President (Keyes v. United States, 109 U. S., 336; McElrath v. United States, 102 U. S., 426; Blake v. United States, 103 U. S., 227, and United States v. Corson, 114 U. S., 619), while a private soldier is by law enlisted for a definite term, and when he has served faithfully *521 he is entitled at the end of each term of enlistment to a discharge as of right; and after thirty years’ service, if he so elects, he may be retired by the President, in which case he therebjr severs his connection with the Army to go on the retired list for the purpose of receiving “the 75 per cent of the pajr and allowances of the rank upon which he was retired. ” He can not thereafter be said to be a component part of the Army.
The question turns on the construction of the language ‘ ‘ that in time of war the pay proper of enlisted men shall be increased 20 per cent over and above the rates of pay as fixed by law.” The act of which that language forms a part is entitled “An act for the better organization of the line of the Army of the United States.” The act, after defining what shall constitute the peace organization of infantay regiments, provides, in substance, that in case of war the President may in his discretion increase the infantry force by establishing a third battalion for each regiment. The act establishes the strength of a company, troop, and battery, in the discretion of the President, to 106 men, including noncommissioned officers, and also makes provision for a call by the President for volunteers or militia of the several States, defining the strength of such organization, providing for increased pay to enlisted men in time of war, and providing that at the end of any war in which the United States may become involved the Army shall be reduced to a peace basis.
The day preceding the passage of that act (30 Stat. L., 364) the Congress not only declared war to exist, but declared that war had existed since the 21st day of April, 1898, between the United States and the Kingdom of Spain, so that the act of April 26 (supra) was clearly a war measure. In fact, section 6 of that act, upon which the claimant bases his fight to recover the 20 per cent increase, depends upon the existence of war.
When that act was passed the claimant was on the retired list, receiving not the ‘‘ pajr proper of an enlisted man,” but “75 per cent of the pay and allowances of the rank upon which he was retired,” plus his allowance in lieu of subsistence and clothing, which latter is given him in express terms by the act of March 16,1898 (supra). The act giving the increase *522 in no way refers to men on the retired list otherwise than bjr the use of the term “pay proper of enlisted men.” Those words we hold are not sufficient to embrace enlisted men on the retired list whose connection with the Army ceases upon their retirement, i. e., they retire from and not into the Army.
It is obvious that the Congress did not intend to include them in the act, nor will the language bear that construction. But assuming the question to be one of doubt, we have but to look to the history of the time and the reason and purpose of the act to enable us to solve that doubt. War had been declared to exist against the Kingdom of Spain; the Army was being increased to repel invasion and to prosecute the war. The purpose of the act was to encourage and seeurc men willing to engage in that conflict, and to that end it was provided “that in time of war the pay proper of enlisted men shall be increased,” etc. How, then, can it bo seriouslj' contended that men on the retired list, who had no duties to perform at home or abroad and whose services were not contemplated by the act or otherwise authorized by law, are entitled to such increase?
It is no answer to saj7 that enlisted men on the retired list of the Army are a part of the Army because subject to court-martial, for if that were true, which we do not concede, the claimant was not assigned to any duty. His status was not changed. He performed no dutj., and in our view of the case was not subject to assignment to military duty without his consent. His retired pay is given him, not for services to )>o rendered in the future, but for services which he had faithfully rendered prior to his retirement. If he had been subject to such military duty and had been assigned thereto his right to increased pay would stand on the same footing as other enlisted men, as he would then have been restored to the “pay proper of enlisted men.” But he remained on the retired list with no military duties to perform during the period of the war.
In the construction of a statute the court must attribute to the Congress an intelligent purpose from the language they use; and when such language is in doubt the histoiy of the time and the reason of the statute may well be inquired into. This does not mean that thecourt may disregard the language, *523 or legislate in respect thereto, but that the court majr consider those elements to ascertain the purpose for which the language was used.
"bested by these rules the claimant, who rendered no military service whatever in that conflict, whose services were not contemplated, and whose status in respect to the Army was not thereby changed, is not entitled to recover the increased pay provided for by the act.
Second. The claimant further contends that he is entitled to the additional pay for length of service under Revised Statutes, section 1284, which reads:
“Sec. 1284. Every soldier who, having been honorably discharged, reenlists within one month thereafter, shall be further .entitled, after five years’ service, including his first reenlistment, to receive, for the period of five years next thereafter, two dollars per month in addition to the ordinary pay of his grade; and for each successive period of five years of service, so long as he shall remain continuously, in the Ármy, a further sum of one dollar per month. The past continuous service of soldiers now in the Army shall be taken into account and shall entitle such soldier to additional pay according to this rule; but services rendered prior to August fourth, eighteen hundred and fifty-four, shall in no case be accounted as more than one enlistment.
That section was originally section 2, act of August 4, 1854 (10 Stat. L., 575), entitled “An act to increase the pa}^ of the rank and file of the Army and to encourage enlistments.” And the language of the section will bear no other construction. To entitle a soldier to the additional pay therein provided for, two things are essential: First, he must have been honorably discharged from the service, and, second, he must have reenlisted within one month thereafter. Length of service, therefore, is not of itself sufficient to entitle the claimant to the additional pay under the statute, and this was the holding of this court in the case of Webb (23 C. Cls. R., 58-60), where the court, in respect of the claim of an enlisted man in the Marine Corps, whose pay is by Revised Statutes, section 1612, assimilated to army pay and bounty, held that the additional pay provided for by section 1284 “does not depend upon mere length of service, but upon two other conditions: First, an honorable discharge; second, a voluntary *524 reenlistment. It is intended primarily to be an inducement to the prompt reenlistment of an honorably discharged soldier, and it can be earned in no other way.”
By General Orders, No. 55, Headquarters of the Army, Adjutant-General’s Office, May 6, 1885, issued by command of Lieutenant-General Sheridan, less than three months after, the passage of the act permitting enlisted men to be retired after thirty years’ service, it is among other things provided by paragraph 4 of that order that ‘ ‘ service on the retired list does not entitle the enlisted man to any increase of reenlisted pay beyond what had accrued at date of retirement, nor is he entitled to any commutation for fuel or quarters. * * * ”
And such we understand has been the ruling of the accounting officers of the Treasury Department since the passage of the act. In the case of Beirne Flamer, decided in 1895 (1st Comp. Dec., Bowler, 459, 463), where an enlisted man in the Army sought additional pay for ten years’ service, it was held that the increase could only be allowed for service after a second reenlistment and that “the same principle applies to subsequent enlistments. ”
The Congress have never recognized enlisted men on the retired list for the purpose of giving them the additional pay provided for by section 1284. That act, be it remembered, was passed thirty years before the act of 1885, permitting enlisted men to be retired after thirty years’ service, and there is nothing therein saving to enlisted men on the retired list the continued benefit of the act. The act, as its title indicates, was to “encourage enlistments” by giving additional pay, conditioned upon an honorable discharge and a reenlistment.
Keeping in view the purpose of the act, as well as the act permitting an enlisted man, after thirty years’ service, to be retired on “seventy-five per centum of the pay and allowances of the rank upon which he was retired,” there is no rule'of construction which would justify the court in holding that upon retirement the claimant remained “continuously in the Army.” He could only remain “continuously in the Army ” in the manner set forth in the section, that is to say, by reenlistment within one month after “having been honorably discharged.” That the claimant did not do.
*525 The Congress, in making appropriations for the support of the Army, have specified the sums appropriated for each object. That is to say, in addition to the appropriations (separately made) for the pay proper of the officers and enlisted men, there follows a specified amount designated in the acts as “additional pay to officers for length of service,” and in like manner to enlisted men for length of service.
Since the act of 1885 separate appropriations have been made for enlisted men on the retired list, but no appropriations have been made to them for length of service. (21 Stat. L., 346; 23 Stat. L., 305, 357, and 24 Stat. L., 93, and like appropriations to the present time.)
The Congress not having recognized enlisted men on the retired list as being entitled to the additional pay for length of service, and that having been the ruling of the executive departments having to do with the act, which accords with our view of the law, we must hold that the claimant. is not entitled to the additional pay provided for by section 1284.
The petition -is dismissed.