Peelle, J.,
delivered the opinion of the court.
The question in this case now arises on the claimant’s motion for a new trial on the following grounds:
“ 1. Error of law in holding that enlisted men on the retired list of the Army do not constitute a part of the Army, and are therefore not entitled to the benefit, of the act of April 26, 1898, section 6 (2 Supp. Rev. Stat., 746), allowing all enlisted men the increase of 20 per cent above the rates of pay fixed by law.
“ 2. Error of law in holding that retired enlisted men are not entitled to the benefit of said act of April 26,1898, whether they constitute a part of the Army or not, on the ground that by the terms of the act creating the retired list each enlisted man is entitled to receive 75 per centum of the pay and allowances of the rank upon which he was retired.”
The motion as well as the briefs and oral argument of counsel are based on the theory that enlisted men on the retired list constitute a part of the Army, and for that reason are entitled to the benefit of the increase of 20 per centum provided for by section 6 of the act of April 26,1898 (30 Stat. L., 364), which reads:
“ Sec. 6. That in time of war the pay proper of enlisted men shall be increased twenty per centum over and above the rates of pay as fixed by law: Provided, That in war time noadditional increased compensation shall be allowed to soldiers performing what is known as extra or special duty: Provided further, That any soldier who deserts shall, besides incurring the penalties now attaching to the crime of desertion, forfeit all right to pension which he might otherwise have acquired.”
But for the earnest and carefully prepared briefs and argument of counsel for the claimant in support of the motion, we should deem it unnecessary to say more than was said in our former opinion in this case (38 C. Cls. R., 511).
In that opinion, referring to the act of March 2, 1899 (30 Stat. L., 799), providing “that in time of war retired officers *180 of the Army may, in the discretion of the President, be employed on active military duty,” the court said:
“There are no such laws with reference to enlisted men on the retired list. There is no statute declaring them to be a part of the Army, nor is there any statute subjecting them to military duty.”
Furthermore, in referring to the act of April 26, 1898 (supra), the court said:
“The act giving the increase in no way refers to enlisted men on the retired list otherwise than by the use of the term ‘pay proper of enlisted men.’ Those words we hold are not sufficient to embrace enlisted men on the retired list whose connection with the Army ceased upon their retirement, i. e., they retire from and not into the Army. ”
The court’s attention is now called to the acts of March 2, 1899, and February 2, 1901 (2 Supp. Rev. Stat., 760, 1466), wherein it is provided “that from and after the date of the approval of this act the Army of the United States shall consist of * * * the' officers and enlisted men on the retired list.” Both acts are substantially the same.
True, by virtue of those acts the Army of the United States consists in part of the “enlisted men on the retired list,” and to that extent, therefore, the court was in error in saying what is quoted above from its former opinion. But certainty it can not be claimed that those acts make enlisted men on the retired list a part of the organization of the Army, subject to military dutj*- as enlisted men on the active list. On the contrary, it was conceded in the argument, and rightly so, that enlisted men on the retired list are not subject to military duty, even at the command of the President. If not subject to military duty, then in what way and for what purpose can it be said that enlisted men on the retired list are a part of the Army %
In the former opinion, after saying that the officers of the Army are, by and with the advice and consent of the Senate, appointed during the pleasure of the President, the court said:
“A private soldier is by law enlisted for a definite term, and when he has served faithfully he is entitled at the end of each term of enlistment to a discharge as of right; and after thirty years’ service, if he so elect, he may be retired by the *181 President, in which case he thereby severs his connection with the Army to go on the retired list for the purpose of receiving ‘the 75 per centum of the pay and allowances of the rank upon which he was retired.’ ”
For what other purpose, therefore, can it be said that enlisted men on the retired list constitute a part of the Army? True, in lieu of receiving a discharge, to which they are entitled, the}'' may elect, after thirty years’ service, to be placed on the retired list by the President, but such a discharge is not withheld to subject them to further military duty, nor can it be said that by their election to go on the retired list they thereby prolong their service in the Army.
However, it is not the purpose of the court to interfere with the War Department in the exercise of its power respecting the status of officers and enlisted men, either on the active or retired list of the Army, and hence what was said in the former opinion and what is now said, respecting the status in the Army of enlisted men on the retired list, was and is only for the purpose of determining the claimant’s rights in respect to his claim for the increased pay provided for by the act of April, 1898.
Whether the claimant be regarded as a part of the Army, ■under the ruling of the War Department or by the acts of Congress referred to, is immaterial' for the purpose of this case, as the ground upon which the court placed its decision, as stated in its former opinion, was:
“It is obvious that the Congress did not intend to include them in the act, nor will the language bear that construction. But assuming the question to be one of doubt, we have but to look to the history of the time and the reason and purpose of the act to enable us to solve that doubt. War had been declared to exist against the Kingdom of Spain; the Army was being increased to repel invasion and .to prosecute the war. The purpose of the act was to encourage and secure men willing to engage in that conflict, and to that end it was. provided ‘ that in time of war the pay proper of enlisted men shall be increased,’ etc. How, then, can it be seriously contended that men on the retired list, who had no duties to. perform at home or-abroad and whose services were not contemplated by the act or otherwise authorized by law, are entitled to such increase ?
*182 “It is no answer to say that enlisted men on the retired list of the Army are a ¡sart of the Army because subject to court-martial, for if that were true, which we do not concede, the claimant was not assigned to any duty. His status was not changed. He performed no duty, and in our view of the case was not subject to assignment to military dutjr without his consent. His retired pay is given him not for services to be rendered in the future, but for services which he had faithfully rendered prior to his retirement. If he had been subject to such military duty and had been assigned thereto, his right to increased pay would stand on the same footing as other enlisted men, as he would then have been restored to the ‘pay proper of enlisted men.’ But he remained on the retired list with no military duties to perform during the period of the war.”
The language of the first proviso to the section granting the increase in pay — i. e., “that in war time no additional increased compensation shall be allowed to soldiers performing what is known as extra or special duty ” — can onty apply to enlisted men on the active list, as those on the retired list are not subject to either regular, extra, or special duty, and therefore the inhibition as to them is meaningless.
And so the language of the second proviso to said section, “that any soldier who deserts shall, besides incurring the penalties now attaching to the crime of desertion, forfeit all right to pension which he might otherwise have acquired,” can have no reference to enlisted men on the retired list, as they have no status with any company, regiment, or other organization from which they can desert, and, besides, having-elected to go on the retired list,- thejr there bjr surrendered whatever right they might otherwise have had to a pension.
Hence it follows that the two provisos to that section can only have reference to the class of enlisted men included in the purview or main body of the section; i. e., enlisted men. subject to “extra or special duty” and those amenable to the crime of desertion, neither of which applies to enlisted men on the retired list, as they are subject to no military duty whatever and have no connection with any company or other organization of the Army from which they can desert; and, having no duty to perform and being subject to none, there is no service from which to desert.
*183 In the case of Tyler v. United, States (105 U. S., 244), cited by the claimant, the question involved was whether an officer on the retired list of the Army was entitled to the benefit of Revised Statutes, sections 1262 and 1263, respecting the increase of 10 per cent of their current yearly pay for each term of five years, and the court, affirming the judgment of this court (16 C. Cls. R., 223), held that he was, because under Revised Statutes, section 1274, he was retired from active service only, and that by the provisions of section 1256 he was “subject to the .rules and articles of war and to trial by general court-martial for any breach thereof;” and for the further reason that the “ten per centum of their current yearly pay for each term of five years,” added to their salary, constitutes their regular pay. And the same is true with reference to the case of John Arth, first-class musician of the IT. S. Marine Corps, cited by the claimant in support of his contention. That is to say, in the latter case the act of March 3, 1899, known as the navy personnel act, fixed a different rate of pay for first-class musicians, thereby superseding the previous statute on the subject, and the Comptroller properly held that he was entitled to be paid the 75 per cent of the new rate. But neither of those cases is applicable to the present case, for here the law concerning the regular pay or salary of enlisted men on the retired list was not affected, as the increase was only temporary. That is to say, “in time of war the pay proper of enlisted men shall be increased,” while section 7 of the same act provides that “at the end of any war in which the United States may become involved the Army shall be reduced to a peace basis.”
As was said in our former opinion, “in the construction of a statute the court must attribute to the Congress an intelli.gent purposeírom the language they use.” The court must not confine itself to the particular words used in a single section, as contended for by the claimant in the present case, but must consider the scope and purpose of the whole act; and when this is done there is no escape from the conclusion that the object and purpose of the act as defined in its title was “for the better organization of the line of the Army” to meet the condition of war which, on the preceding day, the *184 Congress declared had existed between the United States and the Kingdom of Spain since April 21, 1898. In other words, the act was a war measure, and the increase in pay was intended for those enlisted men included in organizations who were subject to military duty..
If the court entertained any doubt about the correctness of its ruling in this case, such doubt would be resolved in favor of the claimant and a new trial granted, but we entertain no doubt whatever as to the correctness of the conclusion reached, and therefore the motion for a new trial must be overruled.