BarNey, J.,
delivered the opinion of the court:
The claimant, who had served as a musician in the United States Army from December 26, 1891, to June 11, 1898, the date of his discharge therefrom, enrolled for service during the Spanish war on June 12, 1898, as chief musician of the Second Alabama Volunteer Infantry, and was mustered out of the service on April 22, 1899, his service having been beyond the limits of the United States. On July 21, 1899, by previous appointment, he presented himself, between the *424 hours of 9 and 10 a. m. to the recruiting officer at Asheville, N. C., Capt. John A. Perry, of the Thirteenth U. S. Infantry, and stated that he desired to reenlist so as to make his service continuous under the law. Captain Perry at the time was busily engaged in enlisting a number of recruits and told the claimant to return again at 2 o’clock in the afternoon of the same day. He did so return at that hour and found Captain Perry still busy. About 3 o’clock Captain Perry had an application for the reenlistment of the claimant prepared and executed by him. Captain Perry then instructed the medical examiner, a local physician, to examine the claimant, which he then and there did, and reported orally to Captain Perry that the claimant’s physical condition was entirely satisfactory, but without making out the required papers. By that time it became necessary for Captain Perry to catch a train in order to go to a subrecruiting station, and he directed the claimant to come again in a few days, when he (Captain Perry) should have returned, and directed his clerk in the meantime to have the surgeon’s certificate and other papers prepared. He then hastily left the office. He returned on July 25, and on that date the claimant was sworn into the service by Captain Perry, who wrote upon the last discharge certificate of the claimant the following:
“ I certify this man was enlisted'by me the 25th day of July, 1899, to date July 21, 1899, for the 29th U. S. V. Infy.
“ John A. Perrt,
“ Capt., 13th Infy., Recruiting Officer.
.The records of the War Department show that Charles Coe applied for reenlistment on July 21, 1899, within three months after his discharge from his prior service, but that he was actually sworn into the service July 25, 1899, in the Twenty-ninth U. S. Volunteer Infantry, and that his enlistment was antedated on September 28, 1899, under the rulings of the War Department at that time, to show that he enlisted July 21, 1899.
On January 5, 1906, a settlement was made of the. claimant’s accounts, when it was decided that he was not entitled to continuous-service' pay by reason of reenlistment July 21, *425 1899, but that his reenlistment should date from July 25, 1899; and certain amounts were charged against his account, and he was refused pay as set forth in Finding III. This suit is in effect an appeal from the above settlement.
The Eevised Statutes provide:
“ Sec. 1282. All enlisted men mentioned in section twelve hundred and eighty who, having been honorably discharged-, have reenlisted or shall reenlist within one month thereafter, shall, after five years’ service, including their first enlistment, be paid at the rate allowed in said section to those serving in the fifth year of their first enlistment.”
“ Seo. 1284. Every soldier who, having been honorably discharged, reenlists within one month thereafter, shall be further entitled, after five years’ service, including his first enlistment, to receive, for the period of five years next thereafter, two dollars per month in addition to the ordinary pay of his grade; and for each successive period of five years of service, so long as he shall remain continuously in the army, a further sum of one dollar per month.”
By the act of August 1, 1894 (28 Stat., 215), the foregoing sections of the Eevised Statutes were ■ amended as follows:
“ Sec. 3. That the period within which soldiers may reenlist with the benefits conferred by sections twelve hundred and eighty-two and twelve hundred and eighty-four of the Eevised Statutes, be, and the same is hereby, extended to three months; and hereafter every enlisted man in the army, excepting general service clerks and general service messengers,. shall be entitled to all the benefits conferred by sections twelve hundred and eighty-one and twelve hundred and eighty-two of the Eevised Statutes: Provided, That to entitle them to the additional pay authorized by section twelve hundred and eighty-one for men serving in the third, fourth, and fifth years, the service must have been continuous within the meaning of this section.”
The Army Eegulations for 1895 contained provisions re-, lating to the enlistment of soldiers into the United States Army, and which are set out in the findings herein. Paragraph 835 of these regulations is as follows:
“ 835. Enlistments will not be antedated so as to allow a soldier additional pay for reenlistment who applies after the period for reenlisting has expired; but when a soldier presents himself for reenlistment and it is necessary to obtain information in his case, or the approval of higher authority, *426 his reenlistment may be made to antedate the time of administering the oath, but must not bear a date prior to the day on which he presented himself.”
The question before the court for decision is, Whether the claimant reenlisted in the army, within the meaning of the statutes and regulations quoted, on the 21st day of July, 1899?
The lexicographers give two distinct significations, or rather uses, of the word “ enlist,” as applied in military or naval usage; one transitive and objective and the other intransitive and subjective. Thus the word is defined in the Standard Dictionary: “(1) Verb, transitive; to engage and place upon the lists for service, as in the army or navy, as to enlist soldiers, mechanics, or seamen. (2) Verb, intransitive ; to enter voluntarily the military service, the navy or the like, by formal enrollment.”
As to what constitutes enlistment into the United States Army is very ably and exhaustively discussed in the case of Tyler v. Pomeroy et al. (8 Allen, 480). That was a case where one had signed a paper in the hands of the selectmen of one of the towns in Massachusetts, containing a promise to serve as a volunteer for three years from the date of being mustered into the United States service. He refused to appear to be mustered into the service, and was seized and taken into camp; and the suit was for false imprisonment for such seizure. The court very properly held that the mere signing of the paper was not sufficient to constitute the plaintiff a soldier. In the elaborate opinion by Gray, •/., the different significations of the term “ enlist ” are recognized, and it was said: “ The word £ enlist ’ and 4 enlistment,’ in the law, as in common usage, may signify either the complete fact of entering the military service or the first step taken by the recruit toward that end.” (Id., 485.)
In that case and in the following case in the Supreme Court enlistment when completed is decided to be a contract which changes the status of the enlisted man, analogous in that respect to the marriage contract. (In re Grimley, 137 U. S., 147.)
In both of the cases above cited a distinction is clearly' recognized between an agreement to enlist (which is the *427 subjective act of enlistment on the part of the soldier) and the completed enlistment which changes the status of the party. In the Grimley case, in discussing the case of Tyler v. Pomeroy et al., supra,, the court said:
“ In that case Mr. Justice Gray, then a member of the Supreme Court of Massachusetts, in an opinion reviewing all the authorities in England and in this country, drew a distinction between an agreement to enlist, which, if broken, simply gives a right of action for damages, and an enlistment, which changes the status of the party, transfers him from civil to military life, and renders him amenable to military jurisdiction.”
In order to become a soldier in the United States Army, i. e., in order to become a fully enlisted man, the party must first enlist by signing the prescribed application, and he must then be accepted and sworn into the service by the proper officer, who is then said to have enlisted the soldier. The signing of the application provided by the Articles of War, supra, is the only act in the matter of enlistment which can be performed by the soldier without the cooperation and assistance of the recruiting officer.
We believe that when a soldier presents himself for service in the army, signs the prescribed application, and submits to and successfully passes a medical examination he has reenlisted within the meaning of section 1284, Revised Statutes, supra. That statute was enacted to encourage soldiers who had seen military service to continue in. the army, and it very properly gave them the whole of .three months’ time between such service. Any other construction of this statute would be liable to do rank injustice, as in the case at bar.
The claimant had made arrangements with the recruiting-officer, who was his former captain, to appear upon the last day to reenter the service; signed the application provided by the Army Regulations, successfully passed the medical examination, and was ready to submit to the last act to complete his change of status, and was .only prevented from doing so by circumstances over which he had no control and which the recruiting officer might have controlled.
It is perhaps unnecessary to add that we think paragraph 885 of the Army Regulations, supra, is not contrary to the Revised Statutes quoted. It was argued by the government *428 attorney at the trial that the claimant did not come within the provisions of that paragraph, because (1) it was not necessary to obtain information in his case (2) or the approval of higher authority.
From our view of the statute as stated the claimant was within the law without this regulation, and if he were not, the circumstances of this case justify the presumption that he was also within the regulation.
It is the decision of the court that the claimant is entitled to pay for continuous service in the army, as stated in the foregoing conclusion of law, and judgment will be entered accordingly.