Barney, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit brought by the Union Pacific Railroad Co. against the United States to recover certain land-grant deductions made by the defendants in a settlement with the plaintiff for the transportation of certain persons. These deductions were made on the ground that the following classes of persons were troops of the United States, and that by virtue of the land-grant statutes the plaintiff was obliged to transport these persons at the land-grant rates established and agreed upon by the parties.
*231 The persons so transported were:
1. Applicants for enlistment.
2. Discharged military prisoners.
3. Discharged soldiers.
4. Eetired enlisted men.
5. Furloughed soldiers.
Upon the authority of Lake Superior & Miss. R. R. Co. v. United States, 93 U. S., 442, where the land grants to railroads by similar provisions to those in the instant case, while the Government is entitled to the free use of such railroads as a public highway, that right does not carry with it the use of all the transportation facilities belonging to and connected with the railroad, and for such facilities furnished the railroad is entitled to a reasonable compensation. It seems that by legislative enactment acceded to by the railroads such reasonable compensation has been agreed upon as 50 per centum of the compensation paid by private parties for the same service.
As a condition to the granting of land to the plaintiff in this case it was provided “ such railroad shall be and remain a public highway for the use of the Government of the United States free from toll or other charges upon the transportation of any property or troops of the United States.” It becomes necessary, then, in the decision of this and similar cases to decide what classes of individuals and what individuals are embraced within the term “ troops of the United States.” It is contended for the defendants that the law is well settled that the land-grant statute is to be construed against the railroads, and this is doubtless true as to the extent and limit of such grants. Leavenworth, etc., R. R. v. United States, 92 U. S., 733, 740; Sioux City & St. Paul R. R. v. United States, 139 U. S., 396, 460; Oregon, etc., R. R. v. United States, 164 U. S., 539. But we know of no such rule made applicable to the conditions or consideration of such grants for the reason that the reason for the rule in the latter case does not exist. It was said by Justice Harlan in the opinion of the court in the Oregon, etc., R. R. case, supra, at page 539: “ The rule of construction applicable to the granting act is the familiar rule that all grants of this description *232 must be construed favorably to the Government, and that nothing passes but what is conveyed in clear and explicit language.” (Citing cases.) “And that the construction should be such as will effectuate the legislative intention, avoiding, if possible, an unjust or absurd conclusion, is also well settled.”
We see no reason for the application of any such rule to this case, for the further reason that the only question before us for decision is the meaning and construction to be given to the simple phrase “troops of the United States.” As was said in Lake Superior, etc., R. R. v. United States, supra, “ It might be very convenient for the Government to have more rights than it has stipulated for; but we are on a question of construction, and on this question the usus loquendi is a far more valuable aid than the inquiry what might be desirable ” (pp. 454, 455).
If we go to the dictionary for the meaning of the word “ troops ” we find that it is defined in a military sense as “ a body of soldiers; a muster of soldiers; an army.” Standard Dict.
The construction to be given to the word “troops” used in the same connection as in this case was before this court in the Alabama Great Southern R. R. case, 49 C. Cls., 522, and it was there held that it did not include the National Guard unless actually and not potentially in the service of the United States. In speaking for this court in that case, Campbell, C. J., said:
“That the National Guard may become ‘troops of the United States’ within the meaning of said land-grant act, is not to be questionedj but, as was said at the bar in this case, it is not the potentiality but the actuality of being in the service contemplated by the Constitution which fixes their status as ‘ troops.’ The meaning of the act under which the claimant must transport troops is not to be restricted to the Regular Army, nor can it be extended to include the National Guard when not in the service of the United States ” (p. 537).
The signification to be given to this word as used, as applied to contract surgeons, cooks, and other usual and necessary employees accompanying and used in connection with the transportation of bodies of the United States Army, *233 is not before us in this case and is not decided. This case is confined to particular classes of persons heretofore mentioned, and those classes only are considered. However, we venture to lay down some rules of construction which should be followed, in all these cases. We think that the general rule applicable to all of these cases is that, in order to come within the provisions of the land-grant act, the persons transported should be a part of the military organization of the United States, and may in certain cases include the Naval Establishment, which, however, is not decided; if a body of troops is transported, every ípember of that body entitled to the provisions of the act must be a necessary member of that body, either directly or indirectly, in its movement; in cases of individual transportation — that is, where there is no movement of a body of troops — the person so transported, to be entitled to its provisions, must be himself an actual member of the military organization of the United States; in other words, be a soldier and traveling for the convenience of the Government.
In the light of these rules we come to the decision of the case before us.
Applicants for enlistment: This class is in no way .connected with the military organization or any movement of the same, and may never become so. “ In order to become a soldier of the United States Army — i. e., in order to become a fully enlisted man — the party must first enlist by signing the prescribed application, and he must then be accepted and sworn into the service by the proper officer.” Coe v. United States, 44 C. Cls., 419, 427. “ Such persons have not changed their status in life from that of ordinary citizens to that of a soldier, and are not amenable to military jurisdiction. They are not members of the military organization, and therefore are not included within the term ‘troops of the United States’; and are not entitled to the reduced rates provided by the land-grant act and the decisions and arrangements under the same.”
Discharged military prisoners: These persons when discharged from the service of the United States are no longer soldiers; in fact, they ceased to be soldiers when they were *234 sent to prison, and when they are discharged from prison they have severed their relations with the United States; they are not under the control of the Government; and when they travel to their homes or elsewhere they are traveling for their own comfort and convenience. They certainly can not be troops of the United States, and can not be said to be traveling as such. It is said that the act making appropriation for “ Transportation of the Army and its supplies ” expressly provides for the transportation of discharged military prisoners. That is undoubtedly true. But it does not follow that the land-grant railroads are charged with this transportation. The United States, for sufficient reasons, choose to provide transportation for this class of persons, but they can not require railroads to transport these persons at land-grant rates unless the land-grant acts require it to be done. These land-grant roads are required to transport troops of the United States at rates which have been established and agreed upon between them and the United States. Discharged military prisoners are not troopc of the United States. Nor can the contract of enlistment between the soldier and the United States, however it may be interpreted between the parties, be construed to impose a burden upon a third party whose obligations to the Government are clearly defined in the statutes.
Discharged soldiers: We next come to consider whether discharged soldiers are troops of the United States within the meaning of the statutes which we are discussing. The same reasoning applies to discharged soldiers as to discharged military prisoners. They cease to be soldiers when they are discharged. Their discharge takes effect on the date of notice to them of such discharge. Army Regulations, 1913, par. 152. When they travel after discharge they do so for their own comfort and convenience. The obligation of the Government to transport them to their homes or elsewhere does not affect their status as soldiers, does not give them a status which they do not have, and can not make them troops of the United States within the meaning of the land-grant statutes.
Eetired enlisted men: This class forms no part of the organization of the Army. They sever their connection with *235 the Army when they go upon the retired list for the purpose of receiving, at the hands of the Government, retired pay. Murphy v. United States, 38 C. Cls., 511, 521. They are in effect pensioners. They have no military duty to perform, and can not be required to perform any. It is true that in the act of April 25, 1914, 38 Stats., 350, known as the volunteer act, provision is made for the employment of retired enlisted men for the performance of certain military duties, and while so employed they doubtless become “troops of the United States.” But when they are retired and furnished transportation to their homes or elsewhere they are traveling for their own comfort and convenience and not for the benefit of the United States, and certainly are not “troops of the United States” within the meaning of the statutes under discussion.
Furloughed soldiers: What has been said herein regarding the other classes discussed is applicable to this class, for while on furlough they are performing no military duty. Soldiers on furlough are not allowed to take with them their aims or accouterments. Army Regulations, 113. They must travel back to their posts or commands at their own expense. Army Regulations, 110. However, this question as to them may be viewed from a different standpoint entirely. It is true that a soldier on furlough is a soldier of the United States and is in the service, but not on duty. The Army Begulations provide that the expense of his travel shall be borne by himself while traveling under furlough. It is also provided that in the event he is unable to pay the expense of his travel to his post or command the sum may be advanced by the commanding officer and reimbursement made by him out of his payv The case before us does not require a decision upon this question of the right of the Government by proper regulations to provide that the expense of travel of a furloughed man while on furlough shall be borne by the Government. The regulations now provide that the expense of his travel shall be borne by him. In the instant case the furloughed man called upon the commanding-officer for the necessary expense to travel back to his command, and subsequently he repaid the amount for the travel *236 expense, and this was done in conformity with the Army Regulations.
It is difficult to see upon what theory the Government can make a deduction from the railroad’s bill because of the land-grant act when the Government has been fully reimbursed for it by the soldier. Certainly it should not be contended that the Government could require the soldier to pay his own expense and reimburse itself out of his wages and then also make the railroad company allow it a further reduction. By private arrangement between the Government and the soldier the former has advanced a certain expense to the soldier for which he alone was liable. The soldier has repaid that expense. By treating the soldier’s travel while on furlough as an individual matter for his own comfort and convenience, the Government has recognized that he was not traveling as a soldier or as a part of the “ troops of the United States.” He has reimbursed the Government for what it has advanced him, and we do not see how the land-grant act can be invoked as having any influence whatever upon the situation. The Government assumed a liability to the railroad for the transportation of the soldier, and the soldier put the Government in funds to discharge that liability.
It follows from the foregoing that the plaintiff is entitled to judgment in the sum of $943.55, and it is so ordered.
Hat, Judge, Booth, Judge, and Campbell, Chief Justice, concur.
DowNey, Judge, did not participate in the decision of this case.