EX PARTE McCANTS.

[HABEAS CORPUS.]

1. *Liability of person having substitute in Confederate army to service in State militia.*—A person who, being liable to military service in the army of the Confederate States under the "conscript laws" of congress, procured a discharge from that service by furnishing a substitute in his stead, is nevertheless subject to militia duty under the State laws, and is liable to the draft ordered by the governor on the 17th June, 1863, under the requisition of the president of the Confederate States for seven thousand troops from the militia of this State.

THE petitioner in this case, Allen G. McCants, applied to the probate judge of Montgomery county for the writ of *habeas corpus,* by which he sought to obtain his discharge from the custody of Col. John H. Cogbourn, commanding the 24th regiment of the militia of this State. The facts of the case, as shown by the petition and the return of the writ, which were uncontroverted, are these : In January, 1863, the petitioner, being liable to military duty under the "conscript laws" of congress, procured a discharge from service in the army of the Confederate States, by furnishing a substitute, who was accepted in his stead. In June, 1863, the president of the Confederate States made a requisition on the governor of this State for seven thousand troops from the State militia, to be mustered into the service of the Confederate States, within the State of Alabama, for the term of six months. The governor thereupon, on the 17th June, ordered a draft of the State militia.—General Orders, No. 10. The draft was held on the 25th July, and the petitioner was drafted as one of the seven thousand troops. On these facts, the probate judge refused to discharge him from custody ; holding that his discharge from service in the Confederate States army, as above stated, did not exempt him from liability to service in the State militia under the draft. The petitioner then renewed his application before this court, where, by agreement of counsel, the

case was argued and submitted on the original papers, without a transcript or bill of exceptions.

A. B. CLITHERALL, for the petitioner.
WM. P. CHILTON, *contra.*

A. J. WALKER, C. J.—The president of the Confederate States made a requisition upon the executive of this State, for seven thousand of the militia, to serve within the State, for six months from the first of August. The petitioner was, on the 25th July, drafted as a militia-man under that requisition. Having been previously enrolled as a conscript, he was, on the 29th January last, discharged because he had furnished a substitute. The question of the case thus stated is, whether this discharge exempts him from liability to serve the Confederate States as a militia-man; and for the reasons which we proceed to state, we decide it in the negative.

The military strength of the Confederate States is divided into two departments: the army proper, embracing the provisional and permanent organization, and the militia. The army proper has been created by virtue of an authority, bestowed in the constitution, "to raise and support armies." The government employs the militia under the separate and distinct constitutional power "to provide for calling forth the militia, to execute the laws of the Confederate States, suppress insurrections, and repel invasions." The service of the citizen in these two different departments is exacted by the authority of distinct powers, granted in distinct clauses of the constitution.

The government may exercise those different powers for different purposes, and may impose upon citizens, in the two distinct departments, duties altogether variant in their character and objects. There is no restriction upon the employment of the army proper, except such as may be implied from the limited powers of our Confederate government. It may be required to serve in an aggressive war in foreign countries, or in building or garrisoning fortifications in times of peace; or to do any other military duty, which the government may legitimately impose. The militia, however, can be called forth only for the three purposes

specified in the constitution, of executing the laws, suppressing insurrections, and repelling invasion. It may happen, that the soldier in the army proper, and the militia-man, may be engaged in the same service; but the obligations of the former, and the scope of his duties, are by far the more extensive, and his service may be more perilous and arduous, more distant and protracted.

The same citizen can not render actual service, simultaneously, in both the military departments; and, therefore, the government can not require it. But it has the constitutional authority to exercise, in reference to any citizen, of the proper capacity and age, either of its distinct powers, and to require his service in either of its military departments. The forbearance of the government to reach and take any citizen, or given class of citizens, by the exercise of the more enlarged power, can not imply an obligation, or commit its faith, to abstain from the exercise of the other more restricted power. Nor can the cessation of the exercise of the power, whereby the citizen is made to serve in the army proper, bind it not to exercise the other power of calling forth the same citizen, as a militia-man, to do the particular duty specified in the constitution. A discharge from the operation of one governmental power can not be a discharge from another, differing in the extent of the obligations imposed.

Neither the intention of the government to discharge from militia duty, nor the desire of the citizen to be so discharged, can be inferred from the granting of a discharge, when asked, from the army proper. Guided by considerations of clemency, or public policy, the government may yield to solicitations for discharges from the army proper, or define conditions upon which they might be granted, for the reason that, in an emergency, the services of the discharged soldier may still be made available for local defense, the suppression of social disturbances, and the enforcement of the laws; and the citizen may well be supposed to have reconciled his sense of patriotism with the act of leaving the army, by the reflection that he could still serve the country as a militia-man. It can not, therefore, be successfully contended, that the discharge was contemplated, either by the

government or by the citizen, as an emancipation from the restricted and specific duties which may be devolved upon the militia. A discharge from the army proper alone can have no effect upon the obligation to render service as a part of the militia.

It may be said, that the petitioner's discharge was not simply from the army as a conscript, but was a general and comprehensive discharge from the military service of the Confederate States; and that, therefore, the argument which we have made has no application to the case. The discharge was granted under the authority of the ninth section of the act of congress, approved April 16th, 1862.— That act simply provides, "that persons not liable for duty may be received as substitutes for those who are, under such regulations as may be prescribed by the secretary of war." Interpreting the transaction between the government and the petitioner in the light of the act, it amounts only to this : that the petitioner, by virtue of the law owing service in the army proper, tenders a man to render it in his place ; the government accepts him, relieves the petitioner from that particular service, and remits him to his original *status*. He is discharged only from the service which another renders in his place. The government exempts from no duty except that which another binds himself to render as a substitute. It discharges from duty in the army proper, which the law authorized it to exact, and not from the militia service, in which he had no substitute.

Whenever only a portion of those within the militia age are placed in the army proper, the substitutes will be found to consist, to a large extent, of men belonging to the militia. The history of the war now pending will show many instances of the substitution of militia-men. If the petitioner's claim to exemption is well founded, whenever a substitute and the principal belong to the militia, two men are lost to the militia service ; the principal, because he has a substitute in the army; and the substitute, because he is in fact in the army. If the government were to take one-half the militia as conscripts, and they were to employ the other half as substitutes, there would, upon the argument for petitioner, be no militia, notwithstanding half of them were

at home following their accustomed vocations. The argument leads to the absurd and shocking conclusion, that a law, simply extending the privilege of substitution to the people, had converted all those who might, by the aid of friendship or money, procure substitutes, into a privileged class, free from the constitutional obligation to serve the Confederate States in the militia, even though every other person belonging to that arm of the public service was in the army. Such an argument can not be sound.

It is contended, that he who has furnished a substitute, is *constructively* in the army proper, and that he can not be required to render the incompatible service of the militia-man. In certain cases, the law from given premises infers facts, without regard to their actual existence. These facts are called *constructive*. Thus, we have in the law constructive fraud, constructive notice, constructive housebreaking, and the like. The inference of these facts is made upon principles and policy which can not apply here, and their application would lead to the most glaring absurdities. The constructive facts are not presumed to exist for a single purpose; but the law adopts them, and follows them in their consequences. If, then, the principal is constructively in the army for one purpose, the law must accept that fact with all that is consequent upon it. The principal should receive the pay, and all the privileges and exemptions provided by the law for the soldier in service; and he should suffer for the desertion, or other misconduct, of the substitute. It can not be necessary to argue this point. From the very nature of the thing, the doctrine of construction is incapable of any application to the case. *Qui facit per alium, facit per se,* is a maxim of the law; but it has no pertinency to the question. He who furnishes a substitute, does not serve through his substitute. The latter, on the contrary, serves in his place—is mustered into service, and discharges all the offices of a soldier, as an independent, distinct person, and not as the representative or agent of another. There can be no such thing as doing military duty through an agent. The nature of the service, and the constancy, fortitude, and heroic qualities which it requires, are such as to exclude the idea of any representation by an

agent in the army. The principal is always entitled to the agent's earnings in the business of the agency; and, therefore, if the substitute were but an agent, the principal should receive the pecuniary compensation, and the higher rewards of honor, and fame, and gratitude, which await the faithful and gallant soldier, and stimulate him to exhibitions of valor.

These reasons, we think, justify the conclusion which we announced at the outset, and which was attained as the result of a consultation, in which all the judges of the court participated.

The petition must be overruled, and the petitioner must pay the costs of the proceeding.

STONE, J.—As I understand the term *militia*, found in the 15th and 16th clauses of section 8, article I, of the Confederate constitution, it does not mean *that body of men*, organized under State authority, who are known as State militia. The State might fail to make, or even to provide for, an organization of the militia; and still the right and power of the Confederate government to "call forth the militia, to execute the laws of the Confederate States, suppress insurrections, and repel invasions," would remain unimpaired. Clause 16 reserves "to the States respectively the appointment of the officers, and the authority of training the militia, according to the discipline prescribed by congress;" but all other powers are to be exercised by or under Confederate authority. I will not say the State authorities may not, if they will, be employed and aid in calling forth the militia; but such assistance is not necessary to the exercise of this power by the Confederate government. The State is armed with no power to defeat the call, by refusing to respond to it; but congress may disregard State agency altogether in the execution of this power, and provide for a direct call on the people, when either of the exigencies mentioned in the fifteenth clause arises. Congress has, also, the clear right to define and declare what persons shall be subject to militia duty, under the call of the Confederate government; a right which was frequently exercised under the government of the United States.— See Brightly's Digest, tit. "*Militia*."

My construction of the word *militia*, as found in the constitution, is, that it is not confined to any organization; but that its true and exact import is, *that portion of the people who are capable of bearing arms—the arms-bearing population.* This definition of the term will facilitate the solution of many of the disputed questions which have arisen on the construction of that part of the constitution which provides for calling forth the militia.

Having thus set myself right on the question of the construction of the term "militia," it is not my intention to offer any comments on the opinion of my brothers *supra*, some portions of which do not meet my approbation.