Peedde, Ch. J.,
delivered the opinion of the court:
• The claimant, a captain in the Maryland National Guard, of fifteen years’ service in various grades, claims longevity pay based on said service for the period he served with his organization, at the request of the governor of said State, with a part of the Regular Army “in the encampment, maneuvers, and field instruction” authorized by section 15, act of January 21, 1903 (32 Stat., 775, 778), being “An act to promote the efficiency of the militia, and for other purposes,” which reads:
“ Seo. 15. That the Secretary of War is hereby authorized to provide for participation by any part of the organized militia of any State or Territory on the request of the gov-. ernor thereof in the encampment, maneuvers, and field instruction of any part of the Regular Army at or near any military post or camp or lake or seacoast defenses of the United States. In such case the organized militia so participating shall receive the same pay, subsistence, and transportation as is provided by law for the officers and men of the Regular Army, to be paid out of the appropriation for the pay, subsistence, and transportation of the army: Provided, That the command of such military post or camp and of the officers and troops of the United States there stationed shall remain with the regular commander of the post without regard to the rank of the commanding or other officers of the militia, temporarily so encamped within its limits or in its vicinity.”
*46 By virtue of the language therein, that while so participating with regular troops the militia “ shall receive the same pay, subsistence, and transportation as is provided by law for the officers and men of the Regular Army,” the claimant contends that, he is entitled to credit for his service in the state militia as a basis for longevity pay under Revised Statutes, section 1262, which reads:
“ Sec. 1262. There shall be allowed and paid to each commissioned officer below the rank of brigadier-general, including chaplains and others having assimilated rank or pay,, ten per centum of their current yearly pay for each term of five years of service.”
The payment of longevity pay to the militia of the several States would doubtless tend to secure more complete and efficient organizations to participate in meneuvers and field instruction and eventually more effective organizations to meet emergencies, and at the same time lessen the necessity for a larger standing army; but these are questions for the wisdom of Congress if such payments are to be made out of ' the Treasury of the United States. Our province is to construe the statute as we find it, giving thereto such force and effect as'the recognized rules of interpretation will justify.
There is no controversy in the present case about the basis of pay for officers of the Regular Army, though the amount of such jo ay varies owing to the length of service of each; and for that reason the only basis upon which to determine the pay of officers in the militia under said act of 1903 is the base pay jirovided by section 1261 for officers of correspond-, ing rank in the Regular Army, unless such militia officers are entitled thereunder to credit for the service rendered by them in their respective States.
In the case of United, States v. Mills (197 U. S., 223), involving the question as to what principal sum the 10 per cent increase of compensation to officers in our island xiosses-sions authorized by the acts of May 26, 1900, and March 2, 1901 (31 Stat., 211, 903), should be comx>uted upon, the court, in resjionse to the contention of the Government that the/ term “ current yearly pay ” mentioned in section 1262 had a different meaning from the term “ ¡iay prcqier ” contained in said acts of May 26 and March 2, supra, said :
*47 “We clo not think that there is any such material difference1 between the two expressions as in this case to demand their different construction. ‘ Current yearly pay ’ and ‘ pay proper,’ as used in the sections, mean the regular, ordinary pay which an officer may be entitled to under the facts in his. case, and if, by virtue of length of service, he is entitled to^ receive the compensation provided for in section 1262, that compensation is his ‘ pay,’ or his ‘ pay proper,’ as distinguished from possible other compensation by any allowances, or commutation, or otherwise.”
See also the case of United States v. Tyler (105 U. S., 244).
That is to say, if an officer of the army is entitled to credit for length of service, then there is to be added to his “ current yearly pay ” the compensation provided for by section 1262, which together constitute his “ pay ” or his “ pay proper,” as distinguished from compensation by way of allowances; but his current yearly pay is that provided by section 1261, as that is the pay upon which the 10 per cent is to be computed “ for his first term of five years of service.”
The act of 1903 under which the claimant bases his right to recover iras before the Acting Comptroller of the Treasury as early as July, 1903 (10 Comp. Dec., 18), and various acts of Congress and decisions in relation thereto were cited' by him, and his ruling was that in computing the pay of officers and enlisted men of the militia of the State their1 prior service should not be taken into account with either the regular or volunteer forces. His decision followed the ruling in the case of United States v. Sweeny (157 U. S., 281, 286), wherein the question arose under section 15, act of July 5, 1838 (5 Stat., 256), providing “that every commissioned officer of the line or staff exclusive of general officers shall be entitled to receive one additional ration per diem for every five years he may have served or shall serve in the army of' the United States.”
The claimant Sweeny was an officer of a New York volunteer regiment, serving therein some two years, when he was commissioned a second lieutenant in the Regular Army. The question was whether his five years of service should be reckoned from the date he was mustered into the volunteer service or from the date he received his commission in the *48 Regular Army, and the court, among other things, said the “ time of service as such volunteers never seems to have been computed in estimating the five years, * * * until the act of March 2, 1867 (c. 159, 14 Stat., 434),” section 1 of which provides that “ in computing the length of service of any officer of the army, in order to determine what allowance and payment of additional or longevity rations he is entitled to, * * * there shall be taken into account and credited to such officer whatever time he may have actually served, whether continuously or at different periods, as a commissioned officer of the United States, either in the Regular Army or since the nineteenth day of April, eighteen hundred and sixty-one, in the volunteer service, either under appointment or commission from the governor of a State or from the President of the United States.”
This act, the court said, would seem to be “ decisive of the question; ” that is to say, that prior to the act of 1867 officers of the Regular Army were not entitled to be credited for longevity pay with their term of service in the Volunteer Army of the United States; that to give them that right further legislation ivas necessary.
Later, by the act of June 18, 1878 (20 Stat., 150, sec. 7), officers of the Army of the United States who had served either as officers in the Volunteer Army during the civil war or as enlisted men in the armies of the United States, Regular or Volunteer, were given credit for the full time they so served for the purpose of computing their longevity pay. These acts show that such service for longevity pay was con-' ferred by statute and not by judicial construction.
The act of 1903 was also before the Judge-Advocate-General of the Army in October; 1904, and that officer, following the decision of the Comptroller of the Treasury and the acts and adjudicated cases referred to, held.“that an officer of the national guard is not entitled to increased pay for length of service when the service was rendered by a commissioned officer of the organized militia of a State or Territory or of the District of Columbia.” And that holding is in harmony with the decision of the court in the case of Taylor v. United States (38 C. Cls., 155, 162), wherein an acting assistant surgeon (appointed from civil life) in the temporary service *49 of the United States Navy at the time of the passage of the navy personnel act of 1899 (30 Stat., 1007) and who was afterwards commissioned in the Regular Navy, claimed, as a basis for computing longevity pay, credit for the time he had served in the temporary service, but the court held that he was not entitled to credit therefor.
It is significant also that by the act of April 12, 1902 (32 Stat., 100), granting to officers of the Revenue-Cutter Service “ the same pay ” as that provided for officers of the army of corresponding rank, Congress added the words “ including longevity pay; ” and this, too, notwithstanding the fact that such officers are in the service of the United States.
The claimant contends that because the officers and enlisted men of the Marine Corps are allowed longevity pay by the accounting officers under Revised Statutes, section 1612, which assimilates their pay to the officers and enlisted men of like grade of the army, therefore he should be allowed credit for the time he so served in the state militia in the state service. But the answer to this contention is that aside from the officers and enlisted men of the Marine Corps being in the service of the United States the accounting officers, as well as the Judge-Advocate-General of the Army, have ruled adversely to the claimant’s right to credit for service in the state militia; and we may add that even if the claimant were an officer in the Regular Army we are aware of no statute or decision under which he could be held entitled to credit for service in the State as a basis for longevity pay from the United States. This was evidently the view of the general assembly of the State of Maryland, for though by section 32, article 65, Code of Public General Laws of Maryland, 1900, chapter 657, it is provided that militia officers, “ according to their rank, shall be entitled to pay at the same rate per diem that officers in the service of the United States receive,” the general assembly thereafter, by way of amendment, added thereto the words “including longevity pay” (chap. 103, sec. 77, art. 65, p. 207, Laws of Maryland, 1908). Under this act the state militia receive longevity pay.
The cases cited by the claimant in support of his contention that under like statutes officers of the Army and Navy *50 of the United. States have been allowed longevity pay are not in point, as in those cases the service for which credit was given was rendered to the United States either in the Regular or Volunteer Army or Navy. This marks the basic error of the claimant’s contention, for while the officers of the state militia while serving with regular troops under the act of 1903 are to have the “ same pay ” as that provided for officers of the army of like grade, Congress did not by the language used intend thereby to include compensation for length of service in their respective States. Congress were not legislating to reward the officers of the state militia for long and faithful service, desirable as that might be, but were making provision whereby, if the governor so requested, they might have the advantage of an experienced army officer in maneuvers and field instruction, for which time so serving they were to be paid the same pay as officers of the army. If Congress had intended to give them longevity pay under section 1262 for state service they would have said so; and not having said so, the court is not at liberty to read that section into the act, particularly as the service therein referred to means service in the Army of the United States.
For the reasons we have given the petition is dismissed.