Campbell, Chief Justice,
delivered tbe opinion of the court:
Tbe claimant, Alabama Great Southern Eailroad Co., is a land-grant road by virtue of tbe act of June 3, 1856, 11 Stat. L., 17, which, among other things, provides, by section 3 thereof:
“ Tbe said railroads shall be and remain public railways for tbe use of tbe Government of tbe United States, free from tolls or other charge upon the transportation of any property or troops of tbe United States.”
It transported under proper requisitions parts of the National Guard belonging to tbe Organized Militia of tbe States of Alabama and Mississippi, respectively, from points in Alabama and Mississippi to Chickamauga Park (or Lytle), Ga., and from the latter place back to the points of starting.
The authority is conferred upon the Secretary of War by section 15 of the act of January 21, 1903, 32 Stat. L., 775, as amended by the act of May 27, 1908, 35 Stat. L., 399, to provide for participation by the Organized Militia in the encampment, maneuvers, and field instructions of any part of the Eegular Army on the request of the governor of the State concerned, and the terms of the statute were observed in this case.
The claimant insists that it is entitled to its full legal tariff rates for transporting said members of the National Guard or Organized Militia to said joint encampment and return, and the defendants contend that as the railroad is a land-grant road it was only entitled to pay for the transportation after deducting the proportionate part based upon the value of the road as distinguished from its rolling stock and equipment. Lake Superior and Mississippi R. R. Co. *530 v. United States, 93 U. S., 442. The claimant was paid the part of its charge admittedly due, but was refused payment on the balance claimed, and therefore brings suit for the recovery of such balance.
The question is whether the said National Guard is to be treated as “ troops of the United States ” within the meaning of said act of 1856.
The term “militia” is an old one and was well known before the Revolutionary War. By the act of May 8, 1792, entitled “An act more effectually to provide for the national defense by establishing an uniform militia throughout the United States,” 1 Stat. L., 271, all free white male citizens of the respective States between the ages of 18 and 45 years (with some exceptions) were required to be enrolled in the militia by the captain or commanding officer of the company, and a number of details looking to the efficiency of the militia were incorporated in said act, which, with acts amendatory of it, was brought into the Revised Statutes and continued until said act of 1903. The control of the militia was left with the States, respectively, in whose bounds they resided. The act of January 21,1903, provides:
“ That the militia shall consist of every able-bodied male citizen of the respective States, Territories, and the District of Columbia, and every able-bodied male of foreign birth who has declared his intention to become a citizen, who is more than eighteen and less than forty-five years of age, and shall be divided into two classes — the Organized Militia, to be known as the National Guard of the State, Territory, or District of Columbia, or by such other designations as may be given them by the laws of the respective States or Territories, and the remainder to be known as the Reserve Militia.”
Most of the States by their legislation adopted the name of National Guard for the Organized Militia and some adopted other names for it. Many had adopted the name of National Guard prior to said act of 1903.
Whether militia be defined as “the body of soldiers in a State, enrolled for discipline but not engaged in actual service except in emergencies as distinguished from regular troops or a standing army,” Black's Law Diet., or as “a body of men enrolled and drilled according to military law *531 as an armed force, but not as regular soldiers,” Gent. Diet., or more comprehensively “that portion of the people who are capable of bearing arms — the arms-bearing population,” per Stone, J., in McGantfs ease, 39 Ala., 112, or as “citizen soldiers,” as some described the militiamen, we think the description of the organized and reserved militia given in said act of 1903 sufficiently meets the requirements of this case.
Speaking generally, said act of 1903 as amended by the act of May 27, 1908, 35 Stat. L., 399, is of a more extensive character than prior legislation on the subject of the militia, which by said act as amended divides the militia into the two classes of organized and the reserve militia. The Organized Militia, which includes the National Guard, is required on and after January 21, 1910, in its organization, armament, and equipment to conform to the general Army Regulations. The President is authorized in time of peace by order to fix the minimum number of enlisted men in each company, troop, battery, etc., and whenever the President calls forth the Organized Militia of any State to be employed in the service of the United States he may specify in his call the period for which such service is required, and the militia so called is required to serve for such term “either within or without the territory of the United States” unless relieved by order of the President; the refusal or neglect of an officer or enlisted man of the militia to present himself for muster into the service upon being called forth subjects him to trial by court-martial, the majority membership of the court-martial to be composed of militia officers. But have these provisions and other provisions of the act as amended deprived the States of the control of their militia, or without more made the militia troops of the United States ?
No State shall without the consent of Congress * * * keep troops * * * in time of peace (Art. I, sec. 10), but—
“A well-regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed.” Art. II, amendment.
This amendment has been held not to be a grant of authority by the Constitution, but declaratory of a right which is in *532 no wise dependent upon that instrument. “ It means that the right shall not be infringed by Congress.” United States v. Cruikshank, 92 U. S., 542; Presser v. People, 116 U. S., 252.
“ The militia, as citizens, are peculiarly under the protection of the State sovereignty. They compose the- only State force, and the genius of our Government forbids that they should be subjected to the military tribunals of the Federal Government unless it be during those extraordinary occasions, defined in the Constitution of the United States, when the public safety and the high behests of war demand the sacrifice.” Mills v. Martin, 19 Johns., 7, 24, decided in 1821. In Dunne v. People, 94 Ill., 120, the court discusses the status of the National Guard of that State, and says:
“ It might be well in this connection to call to mind that ‘ powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States, respectively, or to the people.’ The power of State governments to legislate concerning the militia existed and was exercised before the adoption of the Constitution of the United States, and as its exercise was not prohibited by that instrument it is understood to remain with the States, subject only to the paramount authority of acts of Congress enacted in pursuance of the Constitution of the United States.” (P. 126.) To same effect, People v. Hill, 126 N. Y., 497.
The right of control of the militia by the respective States and their right to legislate regarding the militia has been fully recognized by the Supreme Court, both rights being concurrent with that of Congress, within constitutional limitations, to legislate regarding it and its control, the right of the State yielding to the superior right of Congress acting within said limitations. Houston v. Moore, 5 Wheat., 1; Martin v. Mott, 12 Wheat., 19; Presser v. Illinois, 116 U. S., 252, 267; 1 Kent’s Comm., 265.
Congress may “ provide for calling forth the militia to execute the laws of the Union, suppress insurrections, and repel invasions,” Art. I, sec. 8, and the authority to call forth the militia has been vested in the President, who is the sole judge of the exigency justifying the call. Martin v. Mott, 16 Wheat., 19.
Congress has power:
“ To provide for organizing, arming, and disciplining the militia and for governing such part of them as may be employed in the service of the United States, reserving to the *533 States, respectively, the appointment of the officers and the authority of training the militia according to the discipline prescribed by Congress.” Art. I, sec. 8. And the defendants insist that this clause, taken in connection with the facts that the National Guard referred to went to said encampment upon transportation furnished by the United States, were paid according to section 15 of the act of 1903 as amended, were participants in the “ encampment, maneuvers, and field instruction” of the part of the Army there encamped, and that the command of the camp remained with the regular commander of the post as provided in said section 15, shows that the said National Guard were “ troops of the United States.”
The insistence apparently overlooks the fact that the provision in said clause for “ governing ” the militia applies to “ such part as may be employed in the service of the United States,” while the reservation of the appointment of officers and the authority of training and therefore their government and control is in the States, respectively, when the militia are not employed in said service.
Speaking of said clause in connection with that granting power “to raise and support armies,” it was said by Mr. Justice Gray, speaking for the court in Johnson v. Sayre, 158 U. S., 109: “ Congress is thus expressly vested with the power to make rules for the government of the whole Eegu-lar Army and Navy at all times and to provide for governing such part only of the militia of the several States as, having been called forth to execute the laws of the Union to suppress insurrections or to repel invasions, is employed in the service of the United States.”
The President is Commander in Chief of the Army and Navy of the United States and of the militia of the several States when called into the actual service of the United States. Art. II, sec. 2.
The President is thus “ made Commander in Chief of the Army and Navy of the United States at all times and Commander in Chief of the militia only when called into the actual service of the United States.” Johnson v. Sayre, 158 U. S., 109, 115. The Executive has the undoubted power to establish rules and regulations for the government of the Army, and “the Secretary of .War is the regular constitutional organ of the President for the administration of the *534 military establishment of the Nation, and rules and orders publicly promulgated through him must be received as the acts of the Executive and as such be binding upon all within the sphere of his legal and constitutional authority.” The right of so considering the authority of the President grows out of the fact of his being the Commander in Chief of the mitiary and naval forces. United States v. Eliason, 16, Pet., 291, 301.
By the constitution of Alabama (and as for that matter by the constitutions of perhaps all of the States) the governor thereof is declared to be the commander in chief of the militia except when called into the actual service of the United States.
“ The President therefore has no power over the militia as Commander in Chief until called into actual service, when the functions of the local commander in chief cease and those of the President begin. Until that time powers pertaining to that office are exclusive in the governors, for there can not be two commanders in chief of the same body at the same time.” 10 Op. Atty. Gen., 11.
The fifth amendment forbids the holding of any person to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury “ except in cases arising in the land or naval forces or in the militia when in actual service in time of war or public danger.”
This provision is intended “ to prevent persons not subject to the military law from being held to answer for a capital or otherwise infamous crime without presentment or indictment by a grand jury,” the words “ when in actual service,” etc., referring to the militia and not to “land or naval forces,” because, as said by Mr. Justice Gray, “All persons in the military or naval service of the United States are subject to the military law, the members of the Regular Army and Navy at all times — the militia so long as they are in such service.” Johnson v. Sayre, 158 U. S., 109, 114. And a reason for referring the clause “when in actual service in time of war or public danger ” to the militia and not to the Army or Navy is said to be found in the fact “ that it is only at those times that the militia are under the jurisdiction and control of the General Government,” while the Army and *535 Navy of the United States are always in the service of the Government. Bogart case, 3 Fed. Cases, 799.
The Constitution therefore clearly distinguishes between the Army and Navy on the one hand and the militia upon the other. The latter may be called forth by the President for specific purposes, he being the judge of the exigencies justifying his call, and when so called forth and assembled in obedience to the call there is no doubt that the militia or the National Guard come under the control of the Government and into the service of the United States — the governor of the State ceasing to be commander in chief contemporaneously with the President becoming their Commander in Chief. And certainly when the President becomes the Commander in Chief the militia are in the service of the United States, while they can not be “ in the actual service of the United States ” if he is not their Commander in Chief.
Section 15 of the act of 1903 as amended implies a distinction between “ the troops of the United States ” stationed at the said military post or camp and “the militia temporarily encamped ” there, in its provision that the Regular commander of the post shall remain in command without regard to the rant of the commanding officers of the militia.
The statute as above suggested may indicate an extension of congressional legislation upon the subject of the militia. See 10 Op. Atty. Gen., 11. It is clearly its purpose to make more efficient that force, so that it may the better be able to respond to the President’s call and meet the conditions, should they arise, which in the judgment of the President authorize the calling of them into the service of the United States. The men comprising the active militia — the National Guard — “ come from the body of the militia, and when not engaged at stated periods in drilling and other exercises they return to their usual avocations, as is usual with militia, and are subject to call when the public exigencies demand it.” Dunne v. People, 94 Ill., 138. They are always available in an emergency requiring the prompt exertion of the military power of the State and Nation. People v. Hill, 126 N. Y., 505. Said section provides for the pay and transportation of the National Guard, but the expense comes from a fund specially appropriated, and no *536 part of it can be taken from the sums appropriated for the support of the Regular Army, and it does not authorize the Secretary of War to require their attendance. On the contrary, it is a condition precedent prescribed by the said section that the governor of a State shall request it, before the Secretary of War is authorized to provide for the participation of the Organized Militia in the “encampment maneuvers and field instruction of any part of the Regular Army.” They attend them “ on the request of the governor ” for instruction and drill and not for service. A fact essential to their being in the service of the United States is wanting, namely, a calling forth of them by the. President of the United States. Are they then “ troops of the United States”? The statute (sec. 15), as above stated, implies they are not to be so regarded. ' And “ such an organization (the National Guard), no matter by what name it may be designated, comes within no definition of ‘troops’ as that word is used in the Constitution. The word ‘ troops ’ conveys to the mind the idea of an armed body of soldiers whose sole occupation is war or service, answering to the Regular Army. The organization of the active militia of the State bears no likeness to such a body of men.” Dunne v. People, 94 Ill., 138.
In State v. Wagner, 74 Minn., 518, it is said: “Under our military code the active militia or National Guard is organized and enrolled for discipline except in times of insurrection, invasion, and riot * * *. When not engaged at stated periods in drilling or training for military duty, they return to their usual vocations, subject to call when public exigencies require it, but may not be kept in service like standing armies in times of peace. While enrolled as soldiers of the State for the purposes aforesaid, they are neither 4 troops ’ within the meaning of section 10 of Article I of the Federal Constitution nor a ‘standing army’ within the meaning of the bill of rights of the State.”
In Bowie case, 45 C. Cls., 42, this court decided that the said act of 1903 did not entitle an officer to credit for service in the State militia as a basis for longevity pay; and referring to the provision in that statute for the pay of the National Guard while attending the said encampment ma *537 neuvers and field instruction, Peelle, Chief Justice, there said:
“ Congress were not legislating to reward the officers of the State militia for long and faithful service, desirable as that might be, but were making provision whereby if the governor so requested they might have the advantage of an experienced Army officer in maneuvers and field instruction, for which time so serving they were to be paid the same pay as officers of the Army.”
The constitution of Alabama contains the following, among other provisions, relative to the militia:
“ Sec. 271. The legislature shall have power to declare who shall constitute the militia of the State, and to provide for organizing, arming, and disciplining the same; and the legislature may provide for the organization of a State and Naval Militia.
“ Seo. 272. The legislature, in providing for the organization, equipment, and discipline of the militia, shall conform as nearly as practicable to the regulations for the government of the armies of the United States.
“ Sec. 273. Each company and regiment shall elect its own company and regimental officers.”
By section 131 the governor is made commander in chief of the militia and volunteer forces of the State, except when they shall be called into the service of the United States, and he may call out the same to execute the laws, suppress insurrection, and repel invasion.
The statutes of Alabama conform to these constitutional provisions, and the statute designating part of the militia as the National Guard was enacted in 1897.
The constitution of Mississippi has provisions similar to those in the constitution of Alabama and makes its governor commander in chief of the militia, and by statutes divides the militia into “ the reserve militia, whose service is compulsory, and the National Guard, composed of volunteers.”
That the National Guard may become “troops of the United States ” within the meaning of said land-grant act is not to be questioned, but, as was said at the bar in this case, it is not the potentiality but the actuality of being in the service contemplated by the constitution which fixes their status as “ troops.” The meaning of the act under which the claimant must transport troops is not to be restricted to the *538 Regular Army, nor can it be extended to include the National Guard when not in the service of the United States. The President did not call forth the militia of said States nor direct them to assemble at Chickamauga Park, nor was he their commander in chief while they were there. If it should be conceded that while at the joint camp of instruction the National Guard were under the command of officers of the Eegular Army and because thereof were in the service of the United States — a concession we do not make — it would yet seem that such service commenced with their arrival and ended with their departure, and therefore that during the transportation to and from the camp, for which this action is brought, they were not in the service or troops of the United States.
It follows that claimant should have judgment for $2,447.90, and it is so ordered.
Howry, Judge, took no part in the decision of this case.