Hat, Judge,
delivered the opinion of the court:
The question which is presented for decision in this case is, are National Guard organizations while traveling to and *462 from camps of instruction provided by the United States for the training of the National Guard organizations of the States in the service of the United States; and are they, by reason of the fact that their transportation is paid for and their movements directed by the United States while so traveling troops of the United States within the meaning of the railroad land-grant acts? If they are in the service of the United States, and if they are troops of the United States while so traveling, then land-grant roads must transport them as troops of the United States, and are liable for the deductions imposed by the accounting officers of the Government.
The defendant relies upon the act of June 3,1916, 39 Stat. 166, and in effect insists that under the provisions of that act the National Guard, or militia of the States, has become the National Guard of the United States, and that they are •therefore troops of the United States and come within the meaning of the reservation in the railroad land-grant acts.
The statement of this contention refutes it when we consider the power of Congress over the militia of the States.
The Constitution has two provisions dealing with the militia of the States, and it confers upon Congress certain powers with regard to it, as follows: “ To providé for calling forth the militia to execute the laws of the Union, suppress insurrection, and repel invasions. To provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the States, respectively, the appointment of the officers, and the authority of training the militia according to the discipline prescribed by Congress..” Article I, section 8, of the Constitution.
It is manifestly beyond the power of Congress, under these provisions, to convert the militia of the States into a so-called National Guard of the United States. Congress can “ provide for calling forth the militia to execute the laws of the Union, suppress insurrection, and repel invasions,” and it can provide for the organization, the arming and disciplining of the militia, and it can, as it did' under the act of June 3, 1916, provide for the training of the militia according to the discipline prescribed by it. *463 Section 111 qf the national defense act, 39 Stat. 211, is a clear and positive declaration by Congress that it could not convert the National Guard, or militia of the States, into United States troops without first severing them from their status as militia of the States. Congress recognized that it had power only to call for the National Guard for the specific purposes enumerated in the Constitution. In case of war against a foreign power it had not the power to call forth the militia for the purpose of sending them beyond the borders of the United States. In this section and throughout all the provisions of the act it recognized fully that the National Guard therein dealt with was militia, and not United States troops. In section 68 of the act, 39 Stat. 197, the National Guard is by Congress denominated “ enlisted militia.”
The whole purpose and intent of Congress, as may be seen by a careful study of the national defense act, was to exercise the powers conferred upon it by the Constitution, so that the National Guard should be organized, armed, and disciplined in the same manner as the Regular Army. Congress wanted to make the National Guard an efficient military force, ready for service when called forth under the Constitution, and trained and disciplined for war. Every provision of the act looked to the organizing and training of the militia and to their possible service as United States troops. With that in view it provided for every contingency which might arise or which experience had suggested might be necessary for the most efficient training of these State troops upon which the country would have to rely in large measure in cases of emergency and when it would become necessary to call them forth into the service of the United States.
With this end in view, Congress provided for the appropriation of money annually for the support of the National Guard, not as United States troops but as State militia; and in providing for this support it specifically included in it arms, ordnance stores, quartermaster stores, camp equipage, all other military supplies, and such other expenses pertaining to the National Guard as are now or may hereafter "be authorized by law. By section 67 (39 Stat. 199) *464 and by section 94 of said act (89 Stat. 206) it provided that there may be set aside from the funds appropriated and allotted to any State, Territory, or the District of Columbia such portion of said funds as may be necessary for the payment, subsistence, transportation, and other expenses of such portion of the National Guard as shall participate in encampments or maneuvers. So that Congress provided by law that the National Guard should be transported to and from these encampments, not as troops in the service of the United States but as the National Guard — -the militia — of the States.
When the National Guard participates in encampments and maneuvers provided for them under the provisions of the national defense act they are not in the service of the United States; they are not called forth for any of the purposes specified in the Constitution; and not being so called forth, they are not troops in the service of the United States.
The requirements imposed upon the States in the training of their National Guard by- the national defense act are strictly within the provisions of the Constitution. These requirements are all part of the purpose of the act, which was to have the National Guard so trained and disciplined that they would be ready for service as United States troops in the event that they were called into the service of the United States. None of these requirements infringed upon the rights of the States, none of them changed the character of the National Guard, which in time of peace is militia and in time of war may become United States troops, and when “ called forth to execute the laws of the Union, to suppress insurrection, and repel invasions,” are then in the service of the United States, and while in such service are to all intents and purposes United States troops.
Enough has been said to show that all the parts of the national defense act dealing with the National Guard lead to but one conclusion, and that is that Congress meant in that act only to go as far as the Constitution would permit in organizing, arming, and training the militia, and that it never intended to convert the National Guard into United States troops.
*465 It may be as well to point out that the National Guard can not be compelled to go into encampments provided by the United States for their training and maneuvers. If they did not go it would not in any wise change their character or have the effect to eliminate them. Federal aid, it is true, would be withdrawn, but that would, be the only result.
The Supreme Court of the State of Wisconsin in a very well considered opinion passed upon the meaning of the national defense act. Wisconsin v. Johnson et al., 202 N. W. 191.
The argument made by the defendant that the oath required to be taken upon enlistment in the National Guard, ipso facto, makes the man taking it a soldier in the service of the United States is not sound.
The National Guard has a dual character; it is militia in time of peace, and remains so after it is called forth for the purposes specified in the Constitution, but in the latter case is in the service of the United States instead of being in the service of the State, and the oath is prescribed so as to cover their service in both capacities, and also to prevent delay in inducting them into the service of the United States.
In the instant case we are of opinion that the National Guard of Oregon and Washington were not troops of the United States when being transported to and from an encampment for purposes of training. The fact that the United States paid for their transportation does not make them troops of the United States, and as they are not troops of the United States they do not come within the meaning of the railroad land-grant acts. Alabama Great Southern R. R. Co. v. United States, 49 C. Cls. 522.
Judgment will be entered for the plaintiff in the sum of $1,316.68. It is so ordered.
Geaham, Judge; DowNey, Judge; Booth, Judge; and Campbell, Ohief Justice, concur.